

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00042-CR

_____

MYCHAL WESPRIEST TROTTER, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1530103D

Before Bassel, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

In three points, Appellant Mychal Wespriest Trotter appeals the trial court's judgment adjudicating him guilty and sentencing him to twelve years' confinement for possession of methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.115(a), (d). Trotter contends that the trial court improperly ordered him to pay (1) $1,190 in attorney's fees; (2) a $60 fee "DUE TO CSCD";[1] and (3) a $257 fine. Because Trotter did not appeal the attorney's fees when they were initially assessed in the deferred-adjudication order, we overrule his first point. Because the record does not support $15 of the fee "DUE TO CSCD," because the fine was not pronounced, and because the State concedes that an extra $20 of probation fees were erroneously included in the total reparations, we sustain Trotter's third point and part of his second point. We therefore delete $35 of the total reparations and the $257 fine from the judgment adjudicating guilt, and we also delete these amounts from the incorporated order to withdraw funds from Trotter's inmate trust account. As modified, we affirm the trial court's judgment.

---

[1]The judgment adjudicating Trotter's guilt ordered him to pay reparations totaling $1,750. By referring to the "Revocation Restitution/Reparation Balance Sheet" prepared by the Community Supervision and Corrections Department, it appears that the $1,750 total is comprised of $1,190 for attorney's fees; $60 "DUE TO CSCD"; and $500 for probation fees. Of the $1,750 total reparations, Trotter does not challenge the $500 attributed to probation fees, but the State concedes that he was erroneously charged an extra $20 for probation fees.

## II. Background

In March 2018, Trotter pleaded guilty to possession of methamphetamine and, pursuant to a plea agreement, the trial court placed him on deferred-adjudication community supervision for five years. In its deferred-adjudication order, the trial court assessed a $500 fine that was not suspended and ordered Trotter to pay $1,190 in attorney's fees. Trotter's community-supervision conditions included a $60-per-month probation fee and required him to pay for drug testing.[2]

The State filed a fourth amended petition to revoke Trotter's community supervision and adjudicate his guilt on the underlying offense, alleging that he had committed 8 community-supervision-condition violations: (1) possessing forged materials; (2) evading arrest or detention with a vehicle; (3) committing "OBSTRUCTION-RETALIATION"; (4) committing criminal trespass; (5) using ecstasy; (6) consuming alcohol in March 2019; (7) submitting a diluted urine sample for drug testing; and (8) consuming alcohol in June 2019.

After the State waived allegations 1 through 4, Trotter pleaded "true" to allegations 5 and 6, and the trial court found allegations 5, 6, 7, and 8 to be true. The trial court sentenced Trotter to twelve years' confinement and ordered him to pay reparations, which included $1,190 in attorney's fees and $60 "DUE TO CSCD." The

---

[2]The "Chronological Record of Contacts" prepared by the Community Supervision and Corrections Department reveals that Trotter was required to pay $15 per urinalysis (UA).

trial court included in its written judgment adjudicating guilt a $257 fine[3] but did not orally pronounce that fine. Attached to the judgment adjudicating guilt is an order to withdraw funds totaling $2,381 from Trotter's inmate trust account.[4] This appeal followed.

### III. Analysis

### A. Court-Appointed Attorney's Fees

In his first point, Trotter contends that the trial court improperly ordered him to pay $1,190 in attorney's fees because the trial court never made a finding that Trotter had the financial resources to pay for attorney's fees. Trotter acknowledges that the trial court initially ordered payment of $1,190 in attorney's fees in its order of deferred adjudication. However, Trotter argues that when the trial court adjudicated his guilt, it was improper for the trial court to order repayment of the attorney's fees that arose from the order of deferred adjudication because there is "no basis in the record for the trial court to have determined that [his] financial situation had changed in such a way that he could have repaid the ordered attorney's fees."

---

[3]The record reflects that Trotter paid $243 toward the $500 fine that was originally assessed in the deferred-adjudication order, leaving a balance of $257 in "Fines Remaining."

[4]By referring to the "Revocation Restitution/Reparation Balance Sheet," it appears that the $2,381 total is composed of $1,190 for attorney's fees; $60 "DUE TO CSCD"; $500 for probation fees; $257 for remaining fines; and $374 for remaining court costs.

4

In response, the State argues that under *Riles v. State*, Trotter forfeited his complaint regarding the assessment of the $1,190 in attorney's fees because he failed to raise the issue when he was initially placed on community supervision. 452 S.W.3d 333 (Tex. Crim. App. 2015). We agree.

In *Riles*, the trial court deferred adjudication of Riles's guilt, placed her on community supervision, and ordered her to pay attorney's fees. *Id.* at 334. After the trial court revoked her community supervision and adjudicated her guilt, the trial court ordered her to pay $1,000 in attorney's fees. *Id.* at 335. On appeal from the judgment adjudicating her guilt, Riles argued that the trial court had erred by ordering her to pay the attorney's fees without any evidence that she had the ability to pay them. *Id.* The Amarillo Court of Appeals held that Riles had forfeited this claim by not raising it in an appeal from the order of deferred adjudication. *Id.* The Texas Court of Criminal Appeals affirmed, holding that Riles had forfeited her complaint regarding attorney's fees because (1) she had failed to appeal the original order of deferred adjudication that imposed the attorney's fees, and (2) she had knowledge of her obligation to pay the attorney's fees. *Id.* at 337.

The facts of this case are essentially indistinguishable from the facts in *Riles*. The trial court here deferred adjudication of Trotter's guilt, placed him on community supervision, and ordered him to pay $1,190 in attorney's fees. Trotter failed to appeal the trial court's deferred-adjudication order. After adjudicating Trotter's guilt, the trial court ordered Trotter to repay $1,190 in attorney's fees. The record reflects multiple

5

points where Trotter received notice of his obligation to pay attorney's fees. First, the $1,190 in attorney's fees is included in the trial court's deferred-adjudication order. And second, when the trial court signed that order, Trotter signed a document reciting the conditions of his community supervision, which required payment of attorney's fees. *See Ford v. State*, No. 12-17-00307-CR, 2018 WL 1737085, at *3 (Tex. App.—Tyler Apr. 11, 2018, no pet.) (mem. op., not designated for publication) (concluding that appellant's signature on the written statement of community-supervision conditions demonstrated her knowledge of obligation to pay attorney's fees).

Therefore, because Trotter (1) failed to challenge the imposition of the attorney's fees by direct appeal from the original order of deferred adjudication and (2) knew of his obligation to pay the fees, we hold that he forfeited his complaint that the trial court improperly ordered him to pay $1,190 in attorney's fees in its order adjudicating guilt. *See* Tex. R. App. P. 33.1(a); *Riles*, 452 S.W.3d at 337–38; *Manuel v. State*, 994 S.W.2d 658, 661–62 (Tex. Crim. App. 1999); *Ford*, 2018 WL 1737085, at *3. We overrule Trotter's first point.

## B.     Fee "DUE TO CSCD"

In his second point, Trotter argues that the $60 fee "DUE TO CSCD" should be deleted because it is impossible from the record to determine the authority for the fee. In response, the State argues that a portion of the $60 fee finds support in the record because the trial court conditioned Trotter's community supervision on his submitting to and paying for drug testing. The State contends that the fee "DUE TO

6

CSCD" is linked to past-due payments for multiple UAs at $15 per test. The State, however, concedes that the record reveals only three UAs were performed ($45 in total), leaving $15 unaccounted for.[5] The State thus concedes that $15 should be deleted from the judgment.

We have previously held that drug-testing fees can support a fee "DUE TO CSCD." *See Blackshire v. State*, No. 02-12-00364-CR, 2015 WL 3422498, at *2 (Tex. App.—Fort Worth May 28, 2015, pet. ref'd) (mem. op. on remand, not designated for publication). *But see Demerson v. State*, No. 02-18-00003-CR, 2018 WL 3580893, at *2 (Tex. App.—Fort Worth July 26, 2018, no pet.) (mem. op., not designated for publication) (reviewing record to see if drug testing supported fee "DUE TO CSCD" but determining that record did not show that appellant's use of marijuana was detected through an unpaid drug test or drug patch or that he was tested multiple times).

Here, the "Chronological Record of Contacts" reveals the dates on which Trotter was ordered to submit to a UA and whether he had paid for the testing. On April 30, 2019, Trotter was current on his $60 monthly probation fee and his $15 UA fee but was ordered to submit to a test that date. On May 16, 2019, the chronological record states that Trotter was current on his $60 monthly supervision fee and his $15 UA fee (presumably he paid for the April test on or before that date); he was then "instructed

---

[5]The State "believes that the unaccounted for $15 is from an additional UA that occurred after the prosecutor requested the chronology records on December 4, 2019, but before the adjudication hearing on February 14, 2020." The State, however, concedes that "there is nothing in the record to support this [belief]."

to submit UA this date," and a sample was submitted and tested. On June 5, 2019, a urine sample was collected and tested, but there is no mention of any payment for the May or June UAs or his monthly probation fee. The entries after June 5 but before November 14 do not mention any fees or UAs. On November 14, 2019, the chronological record reflects that Trotter had "FEES - $390 balance." The State explains that this balance represents 6 months of unpaid probation fees ($60 X 6 months = $360)[6] and the 2 unpaid UAs from May and June ($15 X 2 = $30). Also on November 14, 2019, the chronological record reflects that Trotter was ordered to submit a urine sample. A week later, the chronological record states, "Recvd lab confirmation for UA submitted on 11/14/19: DILUTED." Thus, the record shows that Trotter failed to pay three $15 UA fees. Consequently, the record supports only $45 of the $60 fee "DUE TO CSCD."

Because there is support in the record for only $45 of the $60 fee "DUE TO CSCD," we sustain Trotter's second point in part. We modify the judgment to reduce the amount of reparations that Trotter owes by $15, and we delete $15 from the order to withdraw funds from Trotter's inmate trust account. *See Blackshire*, 2015 WL 3422498, at *3.

---

[6]The unpaid monthly probation fees are not included in "DUE TO CSCD." The monthly probation fees are discussed later in this opinion.

## C.    Unpronounced Fine

In his third point, Trotter argues, and the State agrees, that the $257 fine assessed by the trial court should be deleted because the trial court did not orally pronounce the fine at sentencing.  It is well-established that the trial court's oral pronouncement of a sentence controls over its written judgment to the extent they conflict.  *See Taylor v. State*, 131 S.W.3d 497, 502 (Tex. Crim. App. 2004).  Accordingly, we sustain Trotter's third point and modify the judgment by deleting the $257 fine; we also delete that amount from the order to withdraw funds from Trotter's inmate trust account.  *See id.*; *Cox v. State*, No. 02-13-00596-CR, 2015 WL 831544, at *1 (Tex. App.—Fort Worth Feb. 26, 2015, no pet.) (mem. op., not designated for publication).

## D.    Concession on Probation Fees

The State included the following footnote in its brief regarding a miscalculation of the probation fees:

> While not raised by [Trotter], it appears from the records that [he] was assessed an additional $60 in supervision fees for February 15, 2020, even though he was adjudicated on February 14, 2020.  [Trotter] could only owe eight months in supervision fees (June, July, August, September, October, November, December [2019], and January [2020]), or $480. [Record references omitted.]

As we explained in a recent decision,

> The State's confession of error in a criminal case carries great weight, but it is not binding.  *Saldano v. State*, 70 S.W.3d 873, 884 (Tex. Crim. App. 2002), *modified on other grounds sub silencio by Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *Neale v. State*, 525 S.W.3d 800, 810 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also Pickrom v. State*, Nos. 02-19-00188-CR, 02-19-00189-CR, 2020 WL 1808485, at *2 n.3

(Tex. App.—Fort Worth Apr. 9, 2020, pet. ref'd) (mem. op., not designated for publication). Even when the State makes concessions, we must independently examine the record because the proper administration of criminal law cannot be left to the parties' stipulations. *Saldano*, 70 S.W.3d at 884; *Neale*, 525 S.W.3d at 810; *see also Pickrom*, 2020 WL 1808485, at *2 n.3.

*Arent v. State*, No. 02-20-00023-CR, 2020 WL 6326151, at *1 n.1 (Tex. App.—Fort Worth Oct. 29, 2020, no pet.) (mem. op., not designated for publication).

We have authority to modify the judgment to make the record speak truth when a matter has been called to our attention by any source. *See Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, because the record demonstrates that Appellant should have been charged $60 monthly probation fees for 8 months for a total of $480, we modify the judgment to delete $20 of the $500 probation fees that were included in the total reparations that Trotter was ordered to pay.

## IV. Conclusion

Having sustained Trotter's third point and that portion of his second point challenging $15 of the fee "DUE TO CSCD" and having been alerted to an additional $20 of probation fees that were erroneously charged as part of the reparations, we modify the judgment adjudicating guilt to delete $35 of the reparations (leaving a total of $1,715) and the $257 fine, and we delete these amounts totaling $292 from the order

10

to withdraw funds (leaving a total of $2,089).  Accordingly, we affirm the trial court's judgment as modified.  *See* Tex. R. App. P. 43.2(b).

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  May 6, 2021